SO ORDERED: February 24, 2016.



**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 15-91209-BHL-13 |
| MARK BRUNCK | ) | |
| ERIN BRUNCK, | ) | |
|     Debtors. | ) | |

**ORDER ON TRUSTEE'S OBJECTION TO CONFIRMATION**

This matter came before the Court on the Trustee's **Objection to Confirmation of the Plan** [Docket No. 23] which was filed on August 14, 2015, in response to the Debtor's proposed Chapter 13 Plan which was filed on July 28, 2015.  The Court conducted a Confirmation Hearing on September 16, 2015, subsequent to which the Debtors and the Trustee filed post-hearing briefs on October 7 and 27, respectively.

The parties dispute whether the Debtors may claim a vehicle ownership expense as a deduction on Form 22 C-2, line 13c, for an automobile secured only by a non-purchase money loan unrelated to the acquisition of the car. For the reasons set out hereinbelow, the Court concludes that they can. The Trustee's Objection to Confirmation is, accordingly, **OVERRULED.**

<u>Discussion</u>

About a year before the Debtors filed for bankruptcy relief on July 2, 2015, they obtained a modest title loan from a moneylender who required them to pledge their car as collateral. At the time the bankruptcy was filed, their current monthly income exceeded the applicable median income by $90. Because of that, the Debtors were required to calculate their disposable income under 11 U.S.C. section 1325(b)(3), which is current monthly income less "amounts reasonably necessary to be expended" for maintenance or support. That calculation is called the means test or the "[h]eart of [BAPCPA's] consumer bankruptcy reforms." H.R.Rep.No. 109-31, pt. 1, p. 2 (2005).

In performing the means test calculations, above-median-income debtors are entitled to claim certain deductions from income. Those amounts are set out in the National and Local Standards which were developed by the Internal Revenue Service ["IRS"] for use in calculating repayment of delinquent taxes. In addition to those "allowances" under the National and Local Standards, debtors may also deduct actual monthly expenses for certain categories specified as Other Necessary Expenses. Among the allowable deductions are transportation expenses which Standards consist of two parts: ownership costs, for monthly loan or lease payments, and operating costs which include maintenance, repairs, insurance and the like. The question now before the Court is whether the Debtors are entitled to take the car-ownership deduction by virtue of the aforesaid title loan.

In 2011, the Supreme Court held that the car-ownership deduction is not applicable to a debtor who does not make loan or lease payments. *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61. In *Ransom*, because the debtor owned his vehicle free and clear of any encumbrance and because he incurred no ownership expense, the Court

found that the car-ownership expense was not "applicable" under a plain reading of the statute, stating simply that "a debtor should be required to qualify for a deduction by actually incurring an expense in the relevant category." *Id.* at 70.

Since *Ransom,* some courts have held that a debtor's car payment must arise from a purchase-money loan in order to qualify for the ownership deduction. *See, In re Alexander*, 2012 WL 3156760 (Bankr. W.D. Mo.); *In re King*, 497 B.R. 161 (Bankr. N.D. Ga. 2013); *In re Sires*, 511 B.R. 719 (Bankr. S.D. Ga. 2014). The rationale for that holding, however, comes not from the Supreme Court but from the Collection Financial Standards ["CFS"] which are supplemental guidelines prepared by the IRS and contained in the Internal Revenue Manual ["IRM"].

The Trustee cites the aforesaid cases in support of his argument that the Debtors' non-purchase-money loan is not an applicable ownership expense under the means test. He objects to the Debtors' claimed deduction pointing to IRM section 5.8.5.22.3(3), which defines eligible ownership expenses included in the Local Standards for Transportation as those … "*for purchase or lease* of a vehicle…." Also, IRM section 5.15.1.9(1)(B) similarly identifies eligible expenses included in the Local Standards for Transportation as:

> . . . vehicle insurance, *vehicle payment (lease or purchase)*, maintenance, fuel, state and local registration, required inspection, parking fees, toll, driver's license and public transportation. . . ." (emphasis added).

The Court in *Ransom* stated that "courts may consult" the guidelines in interpreting the National and Local Standards but cautioned that "[t]he guidelines of course cannot control if they are at odds with the statutory language." *Ransom*, at 72. The question before the Court is, therefore, whether such guidelines conflict with the statutory language.

At this point, a look at the National and Local Standards is helpful. The IRS Standard, incorporated into Form 22C-2 at line 13a, provides for an "ownership or leasing cost" of $517.00 per vehicle in this region. From that amount, the average monthly payment for all debts secured by that vehicle are subtracted to arrive at a Net Vehicle Ownership or lease expense. The Debtors in this case subtracted their title loan payment of $61.96 on line 13b to arrive at a net vehicle expense of $455.04. The Debtors then

added the car payment back into the calculation with other secured debts as "amounts scheduled as contractually due" to secured creditors on line 33b.[1] As stated by the court in *In re Scott*, 457 B.R. 740, 744 (Bankr. S. D. Ill. 2011), "[i]ntricate as it may be, the approach of the Judicial Conference on Form B22C gives effect to the entire statute."

In *Scott*, the Trustee objected to the debtors' ability to claim the transportation ownership expenses when their monthly car payments were less than the standardized amounts. While it was the amount rather than the nature of the expense that was in issue in *Scott*, its analysis was guided by the precept that "[t]he Court 'must give effect to every word of a statute whenever possible.'" (*Id.* at 745 (citing *Ransom*, 131 S.Ct. at 724)). The court noted that:

> Because section 707(b)(2)(A)(iii) specifically addresses how secured debt payments are to be calculated, the Court cannot, in interpreting section 707(b)(2)(A)(ii)(I), simply read them out of the statute. Instead, section 707(b) must be interpreted in such a way as to harmonize all of its various subparts. Form B22C, as prescribed, does this. By directing debtors to subtract their monthly vehicle loan payment from the I.R.S. Standard at lines 28(b) and 29(b), the form ensures that the 'monthly expenses of the debtor[s] [do] not include any payments for debts.' Permitting debtors to then include these loan payments at line 47, which mirrors the language of section 707(b)(2)(A)(iii), gives effect to all sections of the statute.

*Id.*

The Debtors in this case have an encumbered vehicle. They have a secured debt, a car loan, which is a legitimate ownership expense albeit not a purchase-money expense. Nothing in the National or Local Standards specifies that debtor's loan payment must be in the nature of a purchase money secured loan. Because reference to the guidelines appears to insinuate that restriction into the statutory language, this court finds that the guidelines cannot control.

---

[1] The Trustee does not object to the inclusion of debt repayment in this section of the form. Instead, he asserts that the means test deduction for non-purchase money security interests is "properly accounted for on Line 33b of Form 22C-2" which allows the debtor to reduce monthly disposable income by 1/60th of the loan balance due within 60 months from the date of filing.

The cases relied upon by the Trustee involved debtors who attempted to manipulate the means test in an obvious effort to avoid repayment of creditors and each of those decisions were driven by BAPCPA's underlying policy of "prevent[ing] abuse and ensur[ing] that debtors pay to creditors the maximum they can afford." See, e.g. *Alexander*, 2012 WL 3156760 at *4; *King*, 497 B.R. at 165, and *Sires*, 511 B.R. at 725. And while combatting abuse is a legitimate goal, this Court would suggest that Congress has provided other, more specific, statutory provisions in order to effectuate that policy. For example, not only must a plan be proposed in good faith in order to be confirmed but the debtor must also file the petition in good faith. See, 11 U.S.C. §§ 1325(a)(3) and (7).

The Ransom court acknowledged that the means test is, by its nature, "over- and under-inclusive". 562 U.S. at 78. That Court, rejecting the debtor's various policy arguments regarding BAPCPA's interpretation, noted that the debtor "mistakes what the deductions in the means test are meant to accomplish. Rather than effecting any broad federal policy as to saving or borrowing, the deductions serve merely to ensure that debtors in bankruptcy can afford essential items. The car-ownership allowance thus safeguards a debtor's ability to retain a car throughout the plan period. If the debtor already owns a car outright, he has no need for this protection." *Id.* at 79.

Whether the obligation secured by a vehicle has its origin in a purchase-money loan or a title loan is irrelevant to the debtors' ability to retain a car throughout the plan period. Ransom stands for the simple proposition that a debtor may not deduct loan or lease expenses when he does not have any. The Bruncks' have a car loan which, regardless of its origin, now constitutes a legitimate ownership expense. Because the transportation ownership expense is applicable and the deduction appropriate, the Trustee's Objection to Confirmation must be, and accordingly is, overruled.

**IT IS SO ORDERED.**

###